## THE EL CID.

### (District Court, S. D. New York. June 29, 1903.)

1. COLLISION—VESSEL AT ANCHOR—STEAMSHIP OUT OF FAIRWAY.
   The steering gear of the steamship El Cid became disabled in New York Bay as she was going out to sea, and she drifted with the tide upon the steamship Himera, lying at anchor, and a collision resulted. *Held*, on the evidence, that the Himera was within the anchorage grounds, and that the El Cid was in fault for the collision solely because she was out of the fairway; the case being otherwise one of accident which could not have been foreseen, or its results averted.

In Admiralty. Suit for collision.

Maxwell Evarts, for claimant.
Henry W. Goodrich, for libelant.

HOLT, District Judge. This is an action to recover damages for a collision between the steamships Himera and El Cid on the morning of February 6, 1903. The Himera was lying at anchor on the west side of New York Harbor, below the Statue of Liberty. The El Cid was going out to sea, and when a short distance above the Himera, her steering gear became disabled, so that she was not under control. Under those circumstances, she drifted with the tide upon the Himera, and the collision resulted.

In my opinion this was a case of a pure accident, which could not have been foreseen, or its results averted. For such an accident neither vessel would be held in fault, if it were not for the question which arises as to their position at the time of the accident. The Himera claims that she was anchored within the anchorage grounds on the west side of the harbor. The El Cid claims that the Himera was lying in the fairway, out of the anchorage grounds. If the collision occurred in the anchorage grounds, the El Cid was in fault for going there. If it occurred in the fairway, the Himera was in fault for being there. The question what was the actual place where the collision occurred is, therefore, the sole question in the case.

In my opinion the evidence shows that the Himera was anchored, and that the collision occurred within the anchorage limits. The evidence of the witnesses who saw the vessel at anchor, in my opinion, preponderates that that was her position. The absence of proof of any contemporaneous claim on the part of the El Cid that the Himera

124 F.—64

was anchored in the fairway, as shown by the fact that there was no such entry in the log, and that nothing of the kind was said when the officers of the El Cid visited the Himera immediately after the accident, is weighty. The proof is clear that the Himera was originally anchored on February 5th well within the limits of the anchorage ground, and the claimant's counsel in his brief admits it. The claim is that she dragged her anchors in the high wind of the day and night after she came to anchor. I think the evidence preponderates that she did not. The relative positions of the other vessels in the neighborhood were the same on the morning of the 6th as they had been on the 5th, and it is quite improbable that they should all have dragged their anchors in such a way as to remain in the same relative positions to each other. The evidence given by the captain of the El Cid of her bearings while at anchor after the collision would be very weighty if others on the ship had witnessed his taking of the bearings, or had taken the bearings themselves, which it seems to me he should have had them do. As the evidence stands, I cannot avoid the conclusion that the captain's bearings are erroneous for some reason.

My conclusion is that there should be a decree for the libelant, with costs, and the usual reference to ascertain the amount of damage.